[Civ. No. 37891. First Dist., Div. Three. Sept. 30, 1976.]

LEE EDWARD KLAUS, Plaintiff and Appellant, v.
ALAMEDA-CONTRA COSTA MEDICAL ASSOCIATION BLOOD
BANK, INC., Defendant and Respondent.

418

**COUNSEL**

Hill & Connell and James D. Hill for Plaintiff and Appellant.

McNamara, Lewis & Craddick and Richard E. Dodge for Defendant and Respondent.

**OPINION**

**BROWN (H. C.), J.**—Plaintiff appeals from a judgment dismissing his action based upon strict liability against a nonprofit blood bank for personal injury allegedly caused by the transfusion of blood infected with serum hepatitis. ■ We conclude that the immunity from liability on this basis which was established by the Legislature in Health and Safety Code section 1606 must be applied to blood banks as it has already been applied to hospitals in *Shepard* v. *Alexian Brothers Hosp.* (1973) 33 Cal.App.3d 606 [109 Cal.Rptr. 132].

California Health and Safety Code section 1606 states: "The procurement, processing, distribution, or use of whole blood, plasma, blood products, and blood derivatives for the purpose of injecting or transfusing the same, or any of them, into the human body shall be construed to be, and is declared to be, for all purposes whatsoever, the rendition of a service by each and every person, firm, or corporation participating therein, and shall not be construed to be, and is declared not to be, a sale of such whole blood, plasma, blood products, or blood derivatives, for any purpose or purposes whatsoever."

The effect of the statutory definition of a blood transfusion as a service is to preclude a cause of action on the basis of strict liability in tort for injuries arising from the transfusion of blood. (*Shepard* v. *Alexian Brothers Hosp.*, *supra*, 33 Cal.App.3d 606, 610.)

In *Shepard,* the reviewing court was asked to extend the doctrine of strict liability to services but refused to do so, indicating that the reasons underlying the imposition of such liability did not apply to a hospital which is not engaged in the business of distributing blood to the public and does not put the blood as a product on the market in order to profit therefrom. Appellant points out that a blood bank, in contrast to a hospital, does put the blood on the market. Other policy considerations mentioned in *Shepard,* however, apply equally to blood banks. One is the recognition that, despite every effort to screen donors, the possibility that hepatitis virus may be present in the dried plasma cannot be completely obviated. If, as suggested by appellant, the choice of donors could be made in a way to mitigate the possibility of infection, a failure to use a reasonable means of doing so could furnish the basis for a cause of action in negligence. Moreover, as the court in *Shepard* emphasized, *"there is a strong public policy in favor of promoting an adequate supply of blood."* (33 Cal.App.3d at p. 612.) This policy is promoted equally by the immunity of blood banks and hospitals from suit on the basis of strict liability.

Regardless of the merit of the public policy considerations, it is clear from the inclusive language of section 1606 that the legislative intent was to preclude suits against blood banks as well as hospitals on the basis of strict liability. In doing so, the Legislature has adopted the course

followed by numerous other states.* There is clearly a rational basis for such legislation which has withstood constitutional challenges elsewhere. (See, e.g., *Heirs of Fruge* v. *Blood Services* (5th Cir. 1975) 506 F.2d 841, 848-849; *McDaniel* v. *Baptist Memorial Hospital* (6th Cir. 1972) 469 F.2d 230, 234-235.)

The judgment is affirmed.

Draper, P. J., and Scott, J., concurred.

---

*The court in *Heirs of Fruge* v. *Blood Services* (W.D.La. 1973) 365 F.Supp. 1344, 1350, footnote 3, cites statutes of 44 states which preclude the imposition of legal liability without fault in blood transfusion cases.